**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Marvin L. WARNER, et al., Defendants.**

**FEDERAL HOME LOAN BANK BOARD, Plaintiff,**

v.

**AMERICAN SAVINGS AND LOAN ASSOCIATION OF FLORIDA, Defendant.**

Nos. 86–6742–CIV, 86–1984–CIV.

United States District Court, S.D. Florida, N.D.

Nov. 19, 1987.

Nancy Van Sant, U.S. S.E.C., Atlanta, Ga., for S.E.C.

R. Stan Mortenson, Washington, D.C., Jeffrey M. Weissman, Sparber, Shevin et al., Miami, Fla., for Marvin Warner.

ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the Motion for Preliminary Injunction filed by the Securities and Exchange Commission ("SEC"). The SEC seeks a preliminary injunction restraining and enjoining defendant Marvin L. Warner from violating section 17(a) of the Securities Act of 1933, *as amended*, 15 U.S.C. § 77q(a), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 and for other and further relief.

This action arose from a series of securities transactions involving Home State Savings Bank ("Home State"), an Ohio-chartered savings and loan, and American Savings and Loan Association of Florida ("ASLA") with E.S.M. Government Securities, Inc. ("E.S.M.").

E.S.M. was a Fort Lauderdale, Florida-based corporation which acted as a broker-dealer from 1975 until March 4, 1985, purchasing and selling U.S. Government and Government-guaranteed securities. E.S.M. dealt principally with financial institutions, municipalities, and other broker-dealers nationwide. On March 4, 1985, this court, in a related case, entered a Final Judgment of Permanent Injunction and Other Equitable Relief, permanently enjoining E.S.M. and its corporate affiliates from further violations of the anti-fraud provisions of the securities laws. *Securities and Exchange Commission v. E.S.M. Government Securities, Inc., et al.*, Civil Action No. 85–6190–CIV–GONZALEZ (S.D.Fla., filed March 4, 1985) [Available on WESTLAW, DCT database]. The defendants consented to the entry of final judgment, without admitting or denying the allegations in the SEC's complaint. On March 26, 1985, an involuntary petition in bankruptcy was filed by certain of E.S.M.'s creditors, and on March 27, 1985, it was adjudicated bankrupt. By further Order of this court on June 19, 1985, E.S.M. was made the subject of a stockbroker liquidation proceeding under Subchapter III of Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 741 *et seq. In re E.S.M. Government Securities, Inc., Debtor*, Case No. 85–6254–CIV–GONZALEZ.

Prior to E.S.M.'s collapse in March 1985, Home State and ASLA both engaged in repurchase transactions with E.S.M. A repurchase agreement or repurchase transaction involves the sale of securities with a simultaneous agreement to repurchase them at a later date at a fixed price. A reverse repurchase agreement involves the purchase of securities with an agreement to sell the securities at a later date at a fixed price.

In the transactions in question, Home State and ASLA purchased hundreds of millions of dollars of U.S. Government issued and guaranteed securities through E.S.M. E.S.M. agreed to repurchase the securities at a later date. However, on March 4, 1985, E.S.M. collapsed. Home State and ASLA both lost considerable amounts of money in their dealings with E.S.M.

The SEC contends that Marvin Warner violated the federal securities laws during the course of Home State's and ASLA's relationship with E.S.M. In 1984 and 1985, Warner was the sole shareholder of Home State and the principal shareholder of Home State Financial Inc., the parent corporation of Home State Bank and its predecessors. Warner also belonged to ASLA's board of directors (as a member of the executive committee) from January 1984 until December 28, 1984. He served as the CEO at ASLA from March 1984 to January

1985. Warner maintained a personal account with E.S.M. from 1977 until January 28, 1985.

In this motion, the SEC bases its application for a preliminary injunction on three alleged violations of the federal securities laws which occurred between September 1983 and March 4, 1985. The basis for each of these violations is Warner's purported knowledge of E.S.M.'s insolvency and the "paper losses" realized by both Home State and Warner.

The first alleged violation involves Warner's role in ASLA's decision to purchase $1 billion (face amount) in U.S. Government Securities, Inc. in Spring 1984. Warner allegedly made material misrepresentations to ASLA by stating that his and Home State's dealing with E.S.M. had been "satisfactory." At the same time, Warner failed to disclose to ASLA the risks he knew were involved in dealing with E.S.M.

Warner allegedly learned of the risks presented by E.S.M. in a variety of ways. In August 1983, Warner learned that both he and Home State faced millions of dollars of unrealized losses in their investments with E.S.M. Warner demanded that E.S.M. repay his losses, cover his margin calls and substitute U.S. Treasury Bills for the GNMAs in Warner's account. E.S.M. agreed to these demands although no similar agreement was made on behalf of Home State. The E.S.M. principals allegedly told Warner that E.S.M. was financially unable to reimburse Home State for its losses, to return Home State's collateral, or to cover Home State's margin calls.

The SEC further alleges that David Scheibel, Home State's Executive Vice-President, informed Warner that the Ohio savings and loan examiners were critical of the magnitude and concentration of Home State's investments with E.S.M. Schiebel also purportedly told Warner that there had been regulatory criticism concerning the over-collateralization of Home State's transactions with E.S.M. and the amount of Home State's assets which were at risk. Despite this knowledge, Warner recommended that ASLA purchase $1 billion of U.S. Government Securities from E.S.M.

and stated that his dealings with E.S.M. were satisfactory.

The next alleged violation of the securities laws by Warner involved an offering circular used by Home State to offer $30 million in unregistered debentures due in 1989. Warner is charged with actively assisting in the preparation of the circular which was misleading in that it declared Home State to be a $1.3 billion institution while failing to disclose that its assets faced substantial risks due to Home State's investments with E.S.M.

Finally, Warner is charged with aiding and abetting E.S.M.'s fraud on its customers by "various means." Warner allegedly knew that E.S.M., its principals and its auditor were engaged in activities that violated the securities laws but kept that knowledge from Home State and other customer's of E.S.M. During the time when Warner allegedly knew of E.S.M.'s troubles, Warner recovered the money he invested with E.S.M. while other investors continued to do business with E.S.M.

Warner vehemently disagrees with the SEC's claims, particularly those pertaining to Warner's knowledge of E.S.M.'s insolvency. Warner denies having any knowledge of E.S.M.'s insolvency or wrongdoings. He also denies making misleading statements or omitting to state facts to ASLA and having an active role in the preparation of Home State's offering circular. In sum, Warner disputes the SEC's allegations that he acted with the requisite scienter. *See Aaron v. SEC*, 446 U.S. 680, 689–91, 701–02, 100 S.Ct. 1945, 1951–53, 1958–59, 64 L.Ed.2d 611 (1980) (scienter is necessary element under § 10b). In this circuit, scienter may be established by a showing of knowing misconduct or severe recklessness. *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir.1982).

■ Even assuming, *arguendo*, that the SEC has established violations of the securities laws by Warner, it has not established that preliminary injunctive relief is warranted. In order to obtain injunctive relief "in a case where current violations [of the securities laws] are not alleged, the SEC must establish that there is a reasonable likelihood that the defendant, if not

enjoined, will engage in future violations of the securities laws." *SEC v. Mize*, 615 F.2d 1046, 1051 (5th Cir.1980).

■ "[T]he decision whether to grant or deny injunctive relief is addressed to the sound discretion of the district court." *SEC v. Caterinicchia*, 613 F.2d 102, 105 (5th Cir.1980). The court must, however, view the evidence in the light most favorable to the SEC and the SEC "is entitled to the benefit of all reasonable inferences." *SEC v. Blatt*, 583 F.2d 1325, 1328 (5th Cir.1978).

■ In making its decision, the court must consider several factors, including

> the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

*Blatt*, 583 F.2d at 1334 n. 29. The SEC must also go beyond the mere fact of past violations and offer *"positive proof"* of the likelihood of further violations in the future. *Id.* at 1334 (emphasis added). "Thus, it is not a single factor, but rather the sum of the circumstances surrounding the defendant and his past conduct that governs whether to grant or deny injunctive relief." *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir.1981).

■ The SEC has failed to offer the "positive proof" of the likelihood of future violations as required under *Blatt*, 583 F.2d 1325. In its moving papers, the SEC contends that "Warner's background and experience with publicly held companies and financial institutions and his frequent and sizeable securities transactions in the past provide ample grounds to believe that he again may assume a position in which he could commit further securities laws violations." Memorandum of Law in Support of Plaintiff Securities and Exchange Commission's Motion for a Preliminary Injunction as to Defendant Marvin L. Warner, p. 79. However, Warner testified at the evidentiary hearing on this motion that he neither is nor intends to be in a position which would require disclosure under the securities laws. He has no intention of acquiring a position of control in any publicly traded corporation. In fact, Mr. Warner testified that in light of his criminal convictions in the State of Ohio, he believes it would be very unlikely that he would be asked to become involved in any publicly traded company.

At the evidentiary hearing the SEC attempted to show that as recently as April 1987 Marvin Warner was engaged in insider trading. The SEC charged that Warner's purchase and sale of stock of Security Tag Systems, Inc. were motivated by inside knowledge that Security Tag was about to reveal a new revolutionary security tag. However, the SEC failed to show that Warner's investment with Security Tag Systems, Inc. violated the insider trading laws. There was no showing that Warner had acted on material nonpublic information which he was under a duty to disclose. *See Eichler v. Berner*, 472 U.S. 299, 312, 105 S.Ct. 2622, 2630, 86 L.Ed.2d 215 (1985); *Dirks v. SEC*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); 15 U.S.C. § 78u(d)(2). Likewise, there was no showing that Warner was subject to the insider trading provisions of 15 U.S.C. § 78p(b). Although the SEC need not prove current violations of the securities laws to obtain a preliminary injunction, the fact that Warner realized gains in the stock market is not enough to warrant injunctive relief.

The court has reviewed all of the evidence and heard the testimony of witnesses and argument of counsel and concludes that there has been no showing of a reasonable likelihood that the defendant will engage in violations of the securities laws between the time of this motion and the March 1988 trial date. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion for Preliminary Injunctive Relief as against defendant Marvin L. Warner be and the same is DENIED.