SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

J.W. KORTH & CO., et al., Defendants.

No. 97–0280–CIV.

United States District Court,
S.D. Florida.

Jan. 21, 1998.

Christian Reginald Bartholomew, United States Securities & Exchange Comm., Miami, FL, J. Cindy Eson, United States Securities & Exchange Comm., Miami, FL, for United States Securities and Exchange Commission.

James Joseph McNally, McNally & Walker, Coral Gables, FL, S. Thomas Wienner, Feeney Kellett Wienner Bush, Bloomfield Hills, MI, for J.W. Korth & Co., James Wilder Korth.

## ORDER GRANTING FINAL SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment (DE–36), filed October 17, 1997.

THE COURT has considered the Motion, Response and Reply and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Motion is GRANTED for the foregoing reasons.

The Securities and Exchange Commission ("SEC") filed this action seeking an injunction and monetary penalties. Specifically, the SEC alleges that Defendants J.W. Korth & Co. ("JWK" or "the firm") and James Wilder Korth ("Korth") (collectively "Defendants") violated federal law by failing to produce to the SEC records containing the certificate numbers for defaulted German bonds that the firm was offering for sale to the public, and therefore, Defendants should pay statutory money penalties and be permanently enjoined against future violations of the relevant provisions.

## I. *LEGAL STANDARD*

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Adickes*, 398 U.S. at 157.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

 If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party").

## II. *FACTUAL BACKGROUND/PROCEDURAL HISTORY*[1]

JWK is a registered broker-dealer headquartered in Farmington Hills, Michigan with a branch office in Miami, Florida. (Korth Aff. ¶ 3). The firm specializes in marketing various corporate and government bonds. (*Id.*). Korth is the founder, managing general partner and eighty-eight percent owner of JWK. (Korth Aff. ¶ 2; Korth Dep. 7:14–16).

In the spring of 1996, one of JWK's clients approached the firm with 138 bearer bonds issued by the German Weimar Republic between 1924 and 1930 (the "bonds") for the purpose of determining whether the bonds had any value. (Korth Aff. ¶ 5). In October of 1996, JWK began its attempt to sell these bonds to the public. (Korth Dep. 28–30, 48:10, 69, 72–78; SEC Mem. at 3). At the very least, JWK has three different types of these bonds in its possession and has sold fourteen bonds to three separate investors. (Declaration of Vivian Velazquez[2] ("Velazquez Decl.") ¶ 12).[3] Korth stated that he held some 100 bonds in his inventory and wished to make a market in them. (Korth Dep. at 57, 68–9).

The SEC began a cause examination of JWK's Miami office on November 27, 1996, prompted by several news stories concerning JWK's offer and sale of certain defaulted pre-World War II German gold bonds. (Velazquez Decl. ¶ 3). During the examination, the SEC requested that Defendants provide copies of certain books and records, including blotters and other items, reflecting the certificate numbers of the bonds, as well as copies of the bonds. (Velazquez Decl. ¶ 4). At that time, Korth agreed to provide the SEC with the documentation and records that it requested. (Velazquez Decl. ¶ 5).

On December 2, 1996, Velazquez returned to JWK's offices to pick up the photocopies of the requested books and records, but Korth refused to provide them. (Velazquez Decl. ¶ 6). The next day, the SEC wrote to Korth demanding "immediate, complete and unfettered access to all documents and records relating to any German bearer bonds or similar instruments" held by or subject to the custody or control of JWK. (Declaration of Spencer C. Barasch[4] ("Barasch Decl.") ¶ 3, Ex. A). JWK did not comply with this re-

---

1. The facts contained herein are either undisputed or viewed in the light most favorable to Defendant, the nonmoving party.

2. Velazquez is a broker-dealer examiner in the Market Regulation Division of the SEC who works out of the SEC's Southeast Regional Office in Miami, Florida. (Velazquez Decl. ¶ 2).

3. Korth admitted that the relevant SEC regulations were clear and that the facts set forth in the Velazquez Declaration were true to the best of his knowledge. (Korth Dep. at 79, 120–25).

4. Barasch is an attorney for the SEC and is the Assistant Regional Director of the Southeast Regional Office.

quest in its entirety. (Velazquez Decl. ¶ 7). On December 6, 1996, Defendants delivered to the SEC JWK's research and due diligence files on the bonds but refused to provide access to all books and records relating to the bonds, copies of the bonds, or their certificate numbers. (Velazquez Decl. ¶ 8). Later that day, Barasch wrote another letter to Defendants' counsel allowing them until December 9,1996 at 1:00 p.m. to provide the SEC access to the serial numbers. (Barasch Decl. ¶ 4, Ex. B).

On December 9, the SEC examiners again returned to JWK's office to complete the examination. Korth gave them a document titled "German Bonds Receipt and Delivery Blotter" and several accompanying records of original entry concerning the bonds titled "Physical Bond Record Memorandum," but he still refused to fully comply with the SEC's request and did not furnish the certificate numbers. (Velazquez Decl. ¶¶ 9–10, Ex. A; Barasch Decl. ¶ 4). JWK's Managing Director, Serge Feller, told the examiners that he had redacted or otherwise omitted the certificate numbers from the copies. Feller also gave the examiner copies of the bonds themselves, of which there were fifty. Korth, or his employees at his direction, had placed post-it notes over the certificate numbers on these copies. (Velazquez Decl. ¶ 11, Ex. C). On January 21, 1997, Feller informed the SEC that Defendants were considering offering the bonds through a public, cash auction. The SEC again demanded that Defendants provide the records containing the certificate numbers; Feller reiterated JWK's position that it would not provide the information. (Barasch Decl. ¶ 6).

On February 4, 1997, the SEC filed this action for a temporary restraining order, preliminary and permanent injunctions, and civil money penalties. The same day, a Bloomberg news article appeared reporting that Korth "won't comply with the SEC's request" for the information, and quoted him as saying, "I'm going to stand firm. If I publish these things and Germany discredits them," the bonds could become worthless. (Pl.Ex.7). Korth admitted making such statements to the reporter. (Korth Dep. at 138–39). On February 7, 1997, the Honorable Joan Lenard issued a Temporary Restraining Order ("TRO") on behalf of this Court. Despite this Order, Korth maintained that he would not produce the numbers. (*Id.*).

On February 7, 1997, SEC counsel Christian Bartholomew faxed a copy of the TRO to Defendants along with letter demanding full compliance with the TRO by the close of business on February 10, 1997. (Pl.Ex.9). The next day, an article appeared in the Miami Herald which quoted Korth as stating that he was "going to stand firm and not produce any numbers until Germany has produced its list of its allegedly stolen bonds." (Pl.Ex.10). Korth confirmed these statements as well. (Korth Dep. at 138–39).

At his deposition, Korth asserted that he would not turn over the certificate numbers even if ordered to do so by the Court, but would instead appeal such an Order. Asked if he would comply with a court order if a stay pending appeal was denied, Korth testified that he would "do what [his] conscience dictates under the circumstances." (Korth Dep. at 142, 151). He explained that when the SEC first pursued this, he "hoped [they] would go away. I honestly thought [the SEC] would go away. I didn't think [the SEC] would take this on." (Korth Dep. at 114).

On February 14, 1997, the Court held a hearing on the SEC's request for a preliminary injunction ("PI"). At that time, Defendants admitted that they were subject to the Securities Exchange Act of 1934 ("Exchange Act"), that they would make a market in the bonds absent the SEC's examination, that they had refused to provide the certificate numbers despite the SEC's requests and the TRO, and that they had not provided the numbers as of the PI Hearing. (PI at 1–3). Accordingly, the Court entered the preliminary injunction against Defendants and ordered them to produce the serial numbers within ten days. (PI at 6, 8). The undersigned also noted that it viewed Korth's prior defiance of the TRO to be contumacious and consequently scheduled a hearing on the SEC's Application for an Order to Show Cause for February 21, 1997. (PI Hearing Transcript at 28; PI at 6). The Court explained, however, that Defendants could purge their contempt by complying with the

PI Order. (*Id.*). Later that day, Defendants complied with the PI. (Pl.Ex.11).

### III. *LEGAL ANALYSIS*

■ Section 17(a)(1) of the Exchange Act requires registered broker-dealers such as JWK to make and keep certain records for prescribed periods of time and to furnish copies to the SEC in accordance with rules promulgated by the SEC. *See* 15 U.S.C. § 78q(a)(1). Section 17(b) further provides that all such records are subject to examination at any time by the SEC. *See* 15 U.S.C. § 78q(b).

SEC Rule 17a–(j), promulgated pursuant to the statutory authority provided by Section 17(a), requires that broker-dealers must, upon demand, "furnish promptly" to the SEC "legible, true and complete copies" of records required to be preserved under Rule 17a–4. 17 C.F.R. 240.17a–4(j). Pursuant to Rule 17a–4(a), such records include records that broker-dealers are required to maintain under Rule 17a–3(a)(1). *See* 17 C.F.R. 240.17a–4(a). SEC Rule 17a–3(a)(1) in turn provides that broker-dealers must make and keep "records relating to [their] business," including "[b]lotters (or other records of original entry) containing an itemized daily record of all ... receipts and deliveries of securities (including certificate numbers)." 17 C.F.R. 240.17a–4(a)(1).[5]

■ At the PI Hearing, Defendants asserted that the SEC's request for the certificate numbers is not "reasonable" under § 17(b). *See* PI Transcr. at 4–9. Section 17(b) provides that "[a]ll records of persons described in subsection (a) of this section are subject at any time, or from time to time, to such reasonable periodic ... examinations" as the SEC deems appropriate. *Id.* As this Court has already held at the PI Hearing, the plain language makes clear that any "reasonableness" requirement with respect to the SEC's examination powers relates to time, place and manner of the examination and not to the scope thereof. *See, id.*; PI at 1–3, 5–6. Any broader construction would undercut

the SEC's ability to perform its duties to effectively regulate the securities markets.

Accordingly, based on the facts in § II, *infra*, the Court's prior findings with respect to the PI, and Defendants' assent to the Court's finding of violations, the Court hereby rules, as a matter of law, that Defendants have violated Sections 17(a)(1) and 17(b) of the Exchange Act [15 U.S.C. §§ 78q(a)(1) and 78q(b) ] and Rule 17a–4(j) [17 C.F.R. § 240.17a–4(j) ] promulgated thereunder.

### A. PERMANENT INJUNCTION

■ The SEC requests that the Court permanently enjoin Defendants from violating the securities laws at issue in this case. *See* Mot. at 11–13. Section 21(d) of the Exchange Act provides the Court with jurisdiction to issue a permanent injunction upon application by the SEC showing that "any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, the rules or regulations thereunder, or the rules of a national securities exchange or registered securities association[.]" 15 U.S.C. § 78u(d)(1). This suit is brought by the SEC pursuant to its statutory mandate, which brings with it an implied finding that violations of the statute will harm the public and ought to be restrained. *See United States v. City and County of San Francisco*, 310 U.S. 16, 30–31, 60 S.Ct. 749, 756–57, 84 L.Ed. 1050 (1940); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir.1975); *United States v. State of Florida*, 585 F.Supp. 807, 808 (N.D.Fla.1984).

■ As the Supreme Court has stated, in ruling on a request by the Government for injunctive relief, "the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in these cases." *Hecht Co. v. Bowles*, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944)); *SEC v. Unifund SAL*, 910 F.2d 1028, 1035–36 (2nd Cir.1990). Therefore, the SEC need not show a threat

---

5. The SEC asserts, and the undersigned agrees, that Section 17(a) and (b), and the rules promulgated thereunder, are central to the SEC's execution of its congressionally-mandated regulatory duties. *See, e.g.,* H.R.Rep. No. 229, 94th Cong., 1st Sess. 119–20 (1975) (Commission's "examination authority ... is, of course, essential to any effort by the Commission to discharge its responsibilities under the Act").

of irreparable injury. *See Unifund SAL,* 910 F.2d at 1036; *Management Dynamics,* 515 F.2d at 808–09; *State of Florida,* 585 F.Supp. at 808.

Although the mere fact of a past violation does not ipso facto establish the SEC's right to injunctive relief, and thus is not alone tantamount to the "proper showing" of present or future violations, the Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a "reasonable likelihood" of future transgressions.

*SEC v. Zale Corp.,* 650 F.2d 718, 720 (5th Cir. Unit A), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 973, 71 L.Ed.2d 111 (1981). Relevant factors considered in light of all circumstances include: "the nature of the past violation, the defendant's present attitude, and objective constraints on (or opportunity for) future violations of the securities laws." *Id; SEC v. Warner,* 674 F.Supp. 836, 840 (S.D.Fla.1987); *SEC v. Warner,* 674 F.Supp. 841, 844 (S.D.Fla.1987).

In light of these factors, the Court notes that Defendants failed to comply with the TRO, openly and publicly defied it, and only turned over the numbers after the Court indicated its view that those actions were contumacious and that civil and criminal contempt citations were imminent should Defendants fail to comply with the PI. Given Defendants' defiance of the securities laws, the SEC and this Court, combined with the manner in which Defendants conducted themselves, the Court holds as a matter of law that imposition of a permanent injunction is warranted to prevent Defendants from future violations of §§ 17(a)(1) and 17(b) and Rule 17a–4(j).

**B. MONEY PENALTIES**

 The SEC also seeks imposition of first-tier (the lowest level) money penalties [6] in the amount of $110,000 against JWK and

in the amount of $11,000 against Korth, for two alleged violations of the Exchange Act by each Defendant. Section 21(d)(3)(B)(i) provides that "[t]he amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation [of the Exchange Act], the amount of the penalty shall not exceed ... [$5,500] for a natural person or [$55,000] for any other person[.]" 15 U.S.C. § 78u(d)(3)(B)(i).[7]

The Court agrees with the SEC that monetary penalties are appropriate in this case based on Defendants' disregard for the SEC's examination powers even after the Court issued a TRO. However, the Court disagrees with the SEC's assessment regarding the number of violations. The essence of this case is that Defendants failed to turn over the certificate numbers. Regardless of how many times the SEC asked for the certificates, Defendants' statutory violations occurred by their failure to produce the certificate numbers.[8] As such, the Court will impose a money penalty in the amount of $55,000 against JWK and $5,500 against Korth.

**IV. CONCLUSION AND FINAL JUDGMENT**

IT IS HEREBY ORDERED AND ADJUDGED that the SEC's Motion for Summary Judgment is GRANTED. **FINAL JUDGMENT SHALL BE ENTERED IN FAVOR OF THE SEC AS FOLLOWS:**

1) Defendant J.W. Korth & Co. and Defendant James Wilder Korth, and their directors, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, and each of them, are hereby permanently enjoined from, directly or indirectly, violating or aiding and abetting violations of §§ 17(a)(1) and 17(b) of the Exchange Act [15 U.S.C. §§ 78q(a)(1) and 78q(b) ], and Rule 17a–4(j) [17 C.F.R.

---

6. First-tier penalties are appropriate in this case because Defendants' violations did not involve fraud or, so far as the record indicates, losses to other persons. *See* 15 U.S.C. §§ 78u(d)(3)(B)(ii), (iii).

7. The statute actually sets the maximum penalties at $50,000 and $5,000 respectively. However, pursuant to the Debt Collection Improvement

Act of 1996, these amounts were adjusted for inflation for violations occurring after December 9, 1996. *See* 17 C.F.R. § 201.1001.

8. Even if more than one "technical" violation occurred, the undersigned is satisfied that the penalty imposed herein is sufficient under the circumstances of this case.

**1474**

§ 240.17a–4(j) ] promulgated thereunder, by failing or causing the failure to furnish promptly to representatives of the SEC legible, true and complete copies of those records Defendants are required to preserve under Rule 17a–4(a) [17 C.F.R. § 240.17a–4(a) ], including without limitation "[b]lotters (or other records of original entry) containing an itemized daily record of all ... receipts and deliveries of securities (including certificate numbers)," or by failing or causing the failure to make such records subject to reasonable, periodic, special, or other examinations by representatives of the SEC;

2) Pursuant to § 20(d) of the Securities Act of 1933, 15 U.S.C. § 77t(d) and § 21(d)(3) of the Securities Exchange Act, 15 U.S.C. § 78u(d)(3), Defendant J.W. Korth & Co. shall pay a civil money penalty in the amount of $55,000 and Defendant James Wilder Korth shall pay a civil money penalty in the amount of $5,500. Such payments shall be: (1) made by United States postal money order, certified check, bank cashier's check or bank money order; (ii) payable to the "United States Securities and Exchange Commission"; (iii) transmitted to the Comptroller, U.S. Securities and Exchange Commission, 450 Fifth Street, N.W., Mail Stop 0–3, Washington, D.C. 20549; and (iv) submitted under cover of a letter which identifies the Defendants in this action, a copy of which cover letter and money order or chock shall be sent to Christian R. Bartholomew, Esq., Senior Trial Counsel, Securities and Exchange Commission, Southeast Regional Office, 1401 Brickell Avenue, Suite 200, Miami, Florida 33131; and

3) This Court will retain jurisdiction over this matter and over Defendants in order to implement and carry out the terms of this Final Judgment and all Orders that may be entered and/or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and will order other relief that this Court deems appropriate under the circumstances.