### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### Marc David SHINER, Leon Switchkow, Timothy Wetherald, and Telecom Advisory Services, Inc., Defendants,

and

### Lewis Stinson, Jr., P.A., as escrow agent for certain accounts, Equity Service Administration, Inc., Marketing Media, Inc., and USA Media Group, Inc., Relief Defendants.

### No. 03–60175–CIV.

United States District Court,
S.D. Florida.

May 8, 2003.

**1336**

Thomas Newkirk, Cheryl J. Scarboro, Kathleen A. Ford, Securities & Exchange Commission, Washington, DC, for Securities and Exchange Commission.

Louis Stinson, Jr., Coral Gables, FL, Alvin Ernest Entin, Leon R. Margules, Entin Margules & Della Fera, Fort Lauderdale, FL, Lee Katherine Goldstein, Glenn W. Merrick, Brega & Winters, Denver, CO, Michel Ociacovski Weisz, Segredo & Weisz, Miami, FL, for Louise Stinson, Jr., P.A., as escrow agent for certain accounts, Equity Service Administration, Inc., Marketing Media, Inc., USA Media Group, Inc., Mark David Shiner, Leon Swichkow, Timothy Wetherald, Telecom Advisory Services, Inc.

### *PRELIMINARY INJUNCTION*

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon Plaintiff, the Securities and Exchange Commission's Motion For Preliminary Injunction (DE 14).[1] The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises. An evidentiary hearing on Plaintiff's Motion For Preliminary Injunction was held before the Court on March 24 and 25, 2003.

#### I. *Background*

Plaintiff, the Securities and Exchange Commission (hereinafter the "SEC") commenced the above-styled cause by filing a Complaint For Injunctive and Other Relief (DE 1) alleging violations of various federal securities laws by Defendants Marc David Shiner, Leon Swichkow, Timothy Wetherald, and Telecom Advisory Services, Inc. Specifically, the SEC alleges that Defendants have violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a) and Sections 10(b), 15(a), and 15(c) of the Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(a), and 78o(c).

---

1. By prior Order (DE 21) the Court construed Plaintiff's request For Order To Show Cause Why A Preliminary Injunction Should Not Be Granted as a Motion For Preliminary Injunction.

On February 10, 2003, the Court held an *ex parte* hearing on the SEC's Ex Parte Motion For Temporary Restraining Order And Other Emergency Relief (DE 14) and entered a Temporary Restraining Order (DE 21). In its Temporary Restraining Order (DE 21) the Court set an evidentiary hearing on Plaintiff's Motion For Preliminary Injunction for February 21, 2003. All Defendants were served original process and received notice of the evidentiary hearing. At the evidentiary hearing the SEC and Defendants Marc David Shiner, Leon Swichkow, Timothy A. Wetherald, and Telecom Advisory Services, Inc., and Relief Defendants Equity Administration, Inc., Marketing Media, Inc., and USA Media Group, Inc. were all represented by counsel and the SEC and the above-named Defendants and Relief Defendants consented to the entry of a Preliminary Injunction And Order Granting Further Relief (DE 41) pending a Final Judgment by the Court.

On March 11, 2003, the SEC filed an Emergency Motion For Continuance (DE 55) to continue trial in this matter which had been set for March 17, 2003. By prior Order (DE 65) the Court continued trial in this matter until June 9, 2003. The Court also set a second evidentiary hearing on the SEC's Motion For Preliminary Injunction because Defendants argued that they had not consented to the Preliminary Injunction (DE 41) remaining in effect passed the original trial date of March 17, 2003. Accordingly, the Court held an evidentiary hearing on March 24 and 25, 2003, and now enters the following findings of fact and conclusions of law:

## II. *Findings of Fact*

1. In approximately February, 2001, Defendants, Marc David Shiner ("Shiner"), Leon Swichkow ("Swichkow"), Timothy Wetherald ("Wetherald") and Telecom Advisory Services, Inc. ("Telecom Advisory") began offering investors the opportunity to buy "units" in six Limited Liability Partnerships ("LLPs") which were formed ostensibly to operate competitive local telephone exchange carriers in Western states where Qwest Communications was the dominant local telephone carrier.

2. Ownership of each of the six LLPs was structured into eighty (80) units, fifty (50) voting and thirty (30) non-voting, which sold for $19,975.00 per unit. The names of the six LLPs are: (1) Mile High Telecom Partners, LLP ("Mile High"); (2) Phone Company of Arizona, LLP ("Arizona"); (3) Washington Phone Company, LLP ("Washington"); (4) Minnesota Phone Company Financial Group, LLP ("Minnesota"); (5) Iowa–Nebraska Phone Company, LLP ("Iowa–Nebraska"); and (6) Oregon Phone Company Financial Group, LLP ("Oregon").

3. Defendants raised approximately 7.6 million dollars from the sale of units in the six LLPs.

4. Defendant Wetherald is the manager and part-owner of On Systems Technology, LLC, a Colorado limited liability company formed by Wetherald to provide local exchange and other telecommunications services in the State of Colorado. On Systems Technology, LLC was appointed to manage the local telephone companies on behalf of the LLPs, and On Systems Technology, LLC was the original telephone company manager for each of the six LLPs. On Systems Technology, LLC is not a defendant in this lawsuit.

5. Relief Defendants Marketing Media, Inc. ("Marketing Media"), USA Media Group, Inc. ("USA"), and Equity Service Administration, Inc. ("Equity") are all entities owned and/or operated by Defendants Shiner and Swichkow. Marketing Media, USA, and Equity all received compensation for work done in connection with the LLPs.

6. Relief Defendant, Louis Stinson, Jr., P.A., acted as the escrow agent for the funds collected from investors for each of the six LLPs.

7. Thomas M. Birdwell, Jr., George E. Lindamood, Ronald C. Slechta, Edward Ragone, and Bernard Baake each invested in at least one of the LLPs, and each provided a declaration and/or were deposed in this matter. The Court shall refer to these individuals collectively as "Declarants" or "Deponents."

8. Each prospective investor was initially solicited by facsimile to become a member on an advisory board for a start up telephone company. When the prospective investor contacted the telephone number provided on the facsimile he or she was connected to a salesperson at Defendant Telecom Advisory and a conversation would ensue regarding investing in the LLPS and *not* regarding participation on an advisory board. The salesperson would then send the prospective investor documentation including a Partnership Agreement, Subscription Documents, and Offering Materials.

9. The Partnership Agreements stated that investing in the LLPs was not a passive investment and contained the following language:

> 7.2 **Management.** Participation in this Partnership is not a passive involvement. It is managed by the Partners themselves. Each Partner is required to actively participate in important business decision affecting the Partnership by exercising his/its voting privileges. Each Partner has the right and agrees to participate in one or more committees which shall oversee and conduct important business. These committees may include the following: Accounting and Audit, Advertising and Public Relations, Business Standards, Insurance Coverage, Legal Oversight, Partnership Communications/Newsletters, Planning, Budget and Finance, Sales and Marketing.

10. The Subscription Documents required each prospective investor to answer questions regarding their general business knowledge. Investors also affirmed that they had understood the Partnership Agreement and Subscription Documents and that they had not relied upon any oral or written representations or warranties in investing in the LLPs.

11. The Subscription Documents required each prospective investor to ratify, approve and accept all acts undertaken by On Systems Technology, LLC, the telephone company manager, in connection with the planning, preparation, and creation of the LLPs, and to agree to be bound by any existing contracts entered into by the Initial Managing Partner(s). The Initial Managing Partner(s) for each of the six LLPs were: (1) Mile High—Z. Helfer; (2) Arizona—Paul Meyer and Defendant Swichkow; (3) Washington—George E. Lindamood and Defendant Swichkow; (4) Minnesota—Steven Petersen and Defendant Swichkow; (5) Iowa-Nebraska—Ronald C. Slechta and Defendant Swichkow; and (6) Oregon—Ed Ragone and Defendant Swichkow.

12. The Offering Materials contained a Disclosure of Risk statement which advised prospective investors that the interests being sold were not securities and were not protected under federal securities laws.

13. The Offering Materials touted Defendant Wetherald as being a veteran of fifteen (15) years experience in the telecommunications industry and stated that On Systems Technology, LLC would be responsible for the day-to-day operations of the local telephone companies.

14. The Partnership Agreement advised prospective investors that the pro-

ceeds from the sale of the fifty (50) voting units in each LLP would be expended as follows: (1) 5% for administration of escrow, compliance, legal and accounting; (2) 15% for commissions; (3) 14% for marketing; (4) 4% for partnership administration; (5) 7% for design, printing, shipping, etc.; (6) 15% for operating reserves; (7) 30% for telephone company marketing and customer acquisition; and (8) 10% for telephone company equipment.

15. Prospective investors were not advised that Defendants Shiner and Swichkow owned and/or controlled the entities (i.e., Relief Defendants Equity, Marketing Media, and USA) that would receive commissions and compensation for various services rendered to the LLPs such as administration, marketing, and advertising.

16. Prospective investors were not told of the negative regulatory histories of Defendants Swichkow, Shiner, and Wetherald. For example, investors were not told that Defendant Shiner, *inter alia,* had a previous conviction for federal tax evasion, that Defendant Swichkow paid a civil penalty in settlement of allegations that he violated the Federal Trade Commission's Franchise Rule, and that Defendant Wetherald, *inter alia,* entered into a Consent Decree with the State of Washington enjoining him from becoming employed and/or entering into a participation agreement with any such individual or entity selling interstate or intrastate long distance telecommunications services without first providing any such individual or entity a copy of the Consent Decree and Complaint filed against Defendant Wetherald.

17. Declarants stated that had they been provided the information contained in paragraphs 15 and 16, they would not have invested in the LLPs. Declarants further stated that they have not received any return on their investments.

18. Although the Partnership Agreements stated that investors could not be passive and must take an active part in managing the LLPs, Declarants stated that they were unable to get any information concerning who the other investors in the various LLPs were, and that they were effectively precluded from becoming involved in running the LLPs due to Defendants' unavailability and failure to share information.

19. Declarants further stated that by the time they were able to organize regular communications amongst investors there were effectively no telephone companies left to run because the state of affairs surrounding the telephone companies had disintegrated and the money raised from investors had been distributed to the various entities owned and/or controlled by Defendants Shiner, Swichkow, and Wetherald.

20. One of the LLPs, Mile High, is currently in bankruptcy proceedings.

21. Declarants further stated that they were repeatedly told that Defendant Wetherald was experienced in the telecommunications industry and that he would run the telephone companies on behalf of the LLPs.

22. Some investors did become Managing Partners and once organized were able to remove On Systems Technology, LLC as the management company for their telephone companies. For example, On Systems Technology, LLC is no longer the management company for the Iowa–Nebraska, Oregon, Washington, and Minnesota LLPs.

### III. *Conclusions of Law*

23. This Court has jurisdiction over the above-styled cause pursuant to 15 U.S.C. §§ 77t(b), 77t(d), 77v(a), 78u(d), 78u(e), and 78aa. Venue is proper in the Southern District of Florida because a substantial part of the events that gave rise to the

claims occurred in this District. 28 U.S.C. § 1391; 15 U.S.C. § 78aa.

■ 24. The federal securities laws are to be interpreted broadly and liberally in order to effectuate Congress' intent to protect investors and to reach the various schemes devised by those persons who would use the money of others on the promise of profits. *See S.E.C. v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982); *Stowell v. Ted S. Finkel Inv. Servs.*, 489 F.Supp. 1209, 1219 (S.D.Fla.1980).

■ 25. Under federal securities laws the SEC is entitled to a preliminary injunction if it establishes: (1) a prima facie case of previous violations of federal securities laws; and (2) a reasonable likelihood that the wrong will be repeated. *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 n. 2 (11th Cir.1999). Notably, there is no requirement that the SEC demonstrate irreparable harm because when the Government seeks injunctive relief "the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief in [such] cases." *S.E.C. v. J.W. Korth & Co.*, 991 F.Supp. 1468, 1472–73 (S.D.Fla.1998).

■ 26. The first issue for the Court to resolve is whether Defendants are selling securities or merely units in general partnerships. The term "security" under federal securities laws includes an "investment contract." 15 U.S.C. § 77b(a)(1). An investment contract "is 'a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or third party ....' " *Unique Fin. Concepts, Inc.*, 196

F.3d at 1199 (*quoting SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)).

■ 27. The Eleventh Circuit has divided the *Howey* test into three elements: (1) an investment of money; (2) a common enterprise; and (3) the expectation of profits to be derived solely from the efforts of others. *Id.*[2]

■ 28. Economic substance, not form, determines whether or not the units at issue here are securities. *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir.1981).

29. The parties do not dispute whether there was an investment of money in a common enterprise. Rather, the parties vigorously dispute whether the investors expected profits to be derived solely from the efforts of Defendants.

■ 30. The general rule is that units in general partnerships are not investment contracts and therefore not securities under federal law. *Friendly Power Co. LLC*, 49 F.Supp.2d at 1369. There are, however, exceptions to the general rule. If, for example, the investors have an agreement that leaves them so little power that the arrangement distributes power as would a limited partnership, or the investors are so inexperienced in business affairs that they cannot intelligently exercise the partnership powers, or the investors are so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that they cannot replace the manager of the enterprise or otherwise exercise meaningful partnership powers, then a general partnership may in fact be an investment contract. *Williamson*, 645 F.2d at 424.

---

**2.** Because this Court sits in the Southern District of Florida and the above-styled cause raises a question of federal law, this Court follows and applies Eleventh Circuit and Southern District of Florida case law. *See*

*Meeks v. Ill. Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir.1984); *see also S.E.C. v. Friendly Power Co. LLC*, 49 F.Supp.2d 1363 (S.D.Fla. 1999) (following Eleventh Circuit precedent in securities fraud case).

31. The Partnership Agreements vest power in the investors to manage and control their investments. The SEC, therefore, must show that one of the exceptions to the general rule that units in partnerships are not securities applies in this case. *Gordon v. Terry*, 684 F.2d 736, 742 (11th Cir.1982).

32. Here, the Court concludes that on the record as it now stands the SEC has shown that the units at issue here are securities. Specifically, the Court concludes that investors relied upon representations made to them at the time of investment regarding the abilities of Defendant Wetherald to manage the telephone companies, that investors were dependent upon the unique entrepreneurial and managerial skills of Defendants Shiner, Swichkow, and Wetherald, that any power the investors exercised was illusory, and that the efforts made by Defendants Shiner, Swichkow, and Wetherald were the significant ones that affected the success or failure of the LLPs. *Friendly Power Co. LLC*, 49 F.Supp.2d. at 1369.

33. Approximately eighty-five percent (85%) of the proceeds from investors were transferred almost immediately to entities owned and/or controlled by Defendants Shiner, Swichkow, and Wetherald. The Court doubts whether the investors could ever successfully run the telephone companies when they controlled only fifteen percent (15%) of the money invested. In this sense, even though the Partnership Agreement gives the investors certain powers, it also renders them powerless due to the fact that there are insufficient funds available to run the telephone companies. Moreover, what is beyond doubt in this case is that eighty-five percent (85%) of the investment proceeds went into the hands of Defendants Swichkow, Shiner, and Wetherald for management services of the LLPs. Indeed, to qualify to buy a unit an investor had to ratify all acts undertaken by On Systems Technology, LLC serving as the telephone company manager, and an investor had to agree to be bound by any existing contracts entered into by the Initial Managing Partner. As noted above, entities such as On Systems Technology, LLC, Telecom Advisory, Equity, and Marketing Media, which are all owned and/or operated by Defendants Swichkow, Shiner, and Wetherald, were receiving the vast majority of the proceeds from the investments for their management services and Defendants' ownership of these entities was not disclosed to investors. (DE 18, Ex. 42 to Decl. of Bernard A. McDonough in Support of Ex Parte Application of the S.E.C. for a T.R.O. and other Emergency Relief, Mile High Partners Cumulative Recap (04/12/2001—12/31/2001)). Simply stated, Defendants Swichkow, Shiner, and Wetherald controlled the vast majority of the money necessary to operate the LLPs and were responsible for virtually all of the management services connected to the LLPs and the telephone companies.

Moreover, Deponents stated that they were effectively precluded from participating in the affairs of the LLPs due to the unavailability of these Defendants and Defendants withholding of information. For example, Deponents stated that they could not obtain contact information regarding other investors who were supposed to be managing the LLPs, that Defendants would not return their phone calls, and that Defendants were at times unresponsive to their efforts to participate in the management of the LLPs.

34. The economic reality of the LLPs was that Defendants Shiner, Swichkow, and Wetherald monopolized both the money and information necessary to operate the telephone companies, the investors were unable to exercise any meaningful control over the LLPs due to the Defen-

dants' behavior, the investors were wholly dependent upon Defendants for the success or failure of the LLPs, and the efforts of Defendants Shiner, Swichkow, and Wetherald were the significant ones.

35. The nature of the investment at the time it is offered or sold is also relevant to determining whether or not a security is at issue. *Williamson,* 645 F.2d at 424 n. 14. Here, the Offering Materials touted Wetherald as having fifteen (15) years experience in the telecommunications industry. Also, Deponents stated that they relied upon statements by salespersons at Defendant Telecom Advisory that Wetherald had the experience to manage the telephone companies. Moreover, On Systems Technology, LLC was already in place as the telephone company manager at the time of investment and Defendant Swichkow was serving as Initial Managing Partner for five of the six LLPs. It is clear to the Court that investors were induced at the time the units were offered to invest in the LLPs due to the representations that Wetherald and On Systems Technology, LLC would run the telephone companies and that Defendant Swichkow was serving as Initial Managing Partner.

36. While it is true that investors exercised certain powers and did in fact remove Defendant Wetherald and On Systems Technology, LLC as the managing company of certain LLPs, this fact does not establish that the investors were not dependent upon Defendants for the success or failure of the LLPs. Deponents stated that by the time the investors were able to remove Defendant Wetherald and On Systems Technology, LLC as management company to certain LLPs the vast majority of the proceeds from the investments were in the hands of Defendants Swichkow, Shiner, and Wetherald and the businesses had in effect disintegrated. In reality, therefore, the power to replace On Systems Technology, LLC as telephone company manager is illusory and does not establish that the investors were not dependent upon Defendants for the success or failure of the LLPs.

37. The Court, therefore, concludes that the units at issue here are securities.

38. To establish a prima facie case of violation of Section 5 of the Securities Act, 15 U.S.C. § 77e, the SEC need only allege (1) the sale or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of facilities of interstate commerce in connection with the sale or offer of the securities. *Raiford v. Buslease, Inc.,* 825 F.2d 351, 354 (11th Cir.1987). Here, the SEC has clearly established a prima facie case of a violation of Section 5 of the Securities Act, 15 U.S.C. § 77e. Securities were offered and sold. There is no evidence of a registration statement. Telephone and facsimile were used to sell the securities.

39. Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, all prohibit the fraudulent offer, purchase or sale of securities and proscribe, *inter alia,* the employment of any device, scheme or artifice to defraud, as well as the making of untrue statements of material fact or omission of a material fact in connection with the offering or sale of securities. To state a violation of these anti-fraud provisions, the SEC must show (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which an investor relied; (5) that proximately caused injury. *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001). The test for determining materiality is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action. *SEC v. Carriba Air, Inc.,* 681 F.2d

1318, 1323 (11th Cir.1982). Scienter may be established by a showing of knowing misconduct or severe recklessness; that is, proof of recklessness would require a showing that a defendant's conduct was an extreme departure of the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to a defendant or is so obvious that the actor must have been aware of it. *Id.* at 1324.

40. Here, the SEC has established a prima facie case of violations of the anti-fraud provisions. The SEC has shown that misrepresentations or omissions of material fact were made by Defendants with scienter, which were relied upon by investors, and that the investors have been injured by those misrepresentations and omissions because the investors would not have invested and lost their money had they not been mislead.

41. Section 15(a) of the Exchange Act, 15 U.S.C. § 78*o*(a) prohibits any broker from using interstate commerce to sell securities unless the broker is registered with the SEC. *SEC v. United Monetary Servs., Inc.*, 1990 WL 91812, at *8 (S.D.Fla. May 18, 1990). A "broker" is "any person engaged in the business of effecting transactions in securities for the account of others, but does not include a bank." 15 U.S.C. § 78c(a)(4).

42. Defendants are brokers under federal securities law because they engaged in the business of effecting transactions in securities, i.e. selling the "units" to investors. Because Defendants have not registered as brokers with the SEC they have violated Section 15(a).

43. Section 15(c) prohibits a broker from using the facilities of interstate commerce to sell securities by means of any manipulative, deceptive, or other fraudulent device or contrivance. Since the SEC has established that Defendants violated the anti-fraud provisions, the Defendants have violated Section 15(c).

44. In sum, the SEC has established a prima facie case of previous violations of the federal securities laws.

45. Next, the SEC must establish a reasonable likelihood that the wrong will be repeated. In deciding whether to grant injunctive relief, the Court must consider: (1) the egregious nature of Defendants' actions; (2) the isolated or recurrent nature of the violations; (3) the degree of scienter involved; (4) the sincerity of Defendants' assurances; (5) Defendants' recognition of the wrongful nature of their conduct; and (6) the likelihood that Defendants' present occupations will present opportunities for future violations. *Carriba Air, Inc.*, 681 F.2d at 1322.

46. Here, the SEC has shown a reasonable likelihood of future violations. Defendants' conduct is egregious; Defendants have repeatedly engaged in such conduct; Defendants knew what they were doing; there have been no assurances that Defendants will not continue to violate federal securities laws in the future; Defendants have not recognized the wrongful nature of their acts; and Defendants present occupations present opportunities for future violations.

47. In conclusion, the SEC has established a prima facie case of previous violations of federal securities law, as well as a reasonable likelihood that the wrong will be repeated. The SEC, therefore, has satisfied both requirements for the issuance of a preliminary injunction pending the outcome of this litigation.

48. The Court notes, however, that additional discovery will be taken in this matter and that neither party should infer from this preliminary decision that the Court's findings and rulings will remain

consistent after a full trial on the merits of this action.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

### I. *Preliminary Injunction*

Pending a Final Judgment entered by the Court, Defendants, their directors, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with each of them, are hereby restrained and enjoined from:

A. directly or indirectly (1) making use of any means or instruments of transportation or communications in interstate commerce or of the mails to sell securities in the form of units, common stock, warrants or any other securities, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities; (2) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, any securities, in the form of units, common stock, warrants or any other securities, unless a registration statement is filed with the Securities and Exchange Commission as to such securities (in violation of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c));

B. directly or indirectly, by use of any means or instruments of transportation or communication in interstate commerce, or by use of the mails, in the offer or sale of securities, knowingly or recklessly employing devices, schemes or artifices to defraud (in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a));

C. directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security registered on a national securities exchange or not so registered, knowingly or recklessly: (i) employing devices, schemes or artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaging in acts, practices and courses of business which have operated, are now operating or will operate as a fraud upon the purchasers of such securities (in violation of Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(c) and Rule 10b–5, 17 C.F.R. § 240.10b–5);

D. acting as a broker-dealer by making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (in violation of Section 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a));

E. soliciting, receiving, or depositing into any account any additional investor funds, money, or proceeds from the marketing or sale of partnership interests in any telephone company or enterprise;

F. advertising or promoting in any manner or method their purported investment schemes, plans, or proposals as described in the Complaint in the above-styled cause, including by newspaper, magazine or other publication or through the use of any other means of communication, including telephone, facsimile transmission, electronic messaging or otherwise.

### II. *Continuation/Modification of Asset Freeze*

**IT IS FURTHER ORDERED AND ADJUDGED** that, pending a Final Judgment entered by the Court, the asset

freeze entered as part of the Court's February 10, 2003 Temporary Restraining Order (DE 21) shall continue uninterrupted, with the following modifications:

A. all personal bank accounts held in the name of Defendant Marc David Shiner and/or Leon Swichkow, or for which they have signatory authority, are released from the Court's asset freeze;

B. all corporate bank accounts held in the name of Defendant Telecom Advisory Services, Inc. and/or Relief Defendants Equity Service Administration, Inc., Marketing Media, Inc., or USA Media Group, Inc. are released from the Court's asset freeze;

C. all corporate bank accounts held in the name of 2U Communications, LLC, d/b/a 2U Wireless, are released from the Court's asset freeze;

D. all debtor-in-possession bank accounts held in the name of, or for the benefit of, Mile High Telecom Joint Venture are released from the Court's asset freeze;

E. account number 6050009078, in the name of Britton Wetherald, at 1st United Bank in Aurora, Colorado is released from the Court's asset freeze;

F. account number 072453 at Commerce Bank in Aurora, Colorado and account number 4000121974 at Community First Bank in Denver, Colorado, both in the name of Phone Company Management Group, LLC, are released from the Court's asset freeze;

G. corporate account numbers 4050001050, 405002088, 4050001923 and 40000121958 in the name of On Systems, LLC at 1st United Bank in Aurora, Colorado are released from the Court's asset freeze;

H. corporate account numbers 4050001042 at 1st United Bank in Aurora, Colorado and 07247 at Commerce Bank in Aurora, Colorado, both in the name of On Systems Technology, LLC, are released from the Court's asset freeze; and

I. a $100,000.00 certificate of deposit held in the name of On Systems Technology, LLC at 1st United Bank in Aurora, Colorado is released from the Court's asset freeze to the extent that it is pledged or otherwise encumbered by contractual obligations which pre-date the Court's February 10, 2003 Temporary Restraining Order.

With respect to Relief Defendant Louis Stinson, Jr., P.A., the asset freeze shall continue to be limited to the following account numbers at Regent Bank, held for the following Limited Liability Partnerships ("LLP") by Louis Stinson, Jr., P.A. as escrow agent:

| LLP | Account Number |
| --- | --- |
| Mile High Telecom Partners, LLP | 202855706 |
| Phone Company of Arizona, LLP | 203071306 |
| Phone Company of Washington, LLP | 3200306406 |
| Phone Company of Minnesota, LLP | 3200324206 |
| Iowa/Nebraska Phone Company, LLP | 3200889706 |
| Phone Company of Oregon, LLP | 3200329306 |

All financial institutions which receive notice of this Order are directed to provide counsel for the Securities and Exchange Commission, upon the Securities and Exchange Commission's request and without the issuance of a subpoena, with account opening documentation, account balance information and any documents concerning transactions in accounts held in the name of Defendants Marc David Shiner, Leon Swichkow, or Timothy Wetherald, or in which they hold a beneficial interest or over which they exercise signatory authority or power of attorney.

III. *Records Preservation*

**IT IS FURTHER ORDERED AND ADJUDGED** that, pending a Final Judgment entered by the Court, the parties, their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of

them, and each of them, be and hereby are restrained and enjoined from directly or indirectly destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to the Defendants and Relief Defendants wherever located, until further Order of the Court.

### IV. *Expedited Discovery*

**IT IS FURTHER ORDERED AND ADJUDGED** that:

A. the parties may continue to take depositions upon oral examination of, and obtain the production of documents from, parties and non-parties subject to three (3) business days notice. Should any Defendant and Relief Defendant fail to appear for a properly noticed deposition, that party may be prohibited from introducing evidence at the trial of this matter;

B. the parties shall continue to be entitled to serve interrogatories, requests for the production of documents and requests for admissions. The parties shall respond to such discovery requests within five (5) business days of service;

C. all responses to the Securities and Exchange Commission's discovery requests shall be delivered to Kathleen Ford at 450 Fifth Street, N.W., Mail Stop 9–11, Washington, D.C. 20549–0911, by the most expeditious means available;

D. service of discovery requests shall be sufficient if made upon the parties by facsimile or overnight courier, depositions may be taken by telephone or other remote electronic means; and

E. the parties hereby waive right to a jury trial and to trial before the Court specially set for *Monday, June 9, 2003*.

### V. *Retention of Jurisdiction*

**IT IS FURTHER ORDERED AND ADJUDGED** that the Court shall retain jurisdiction over the above-styled cause and Defendants and Relief Defendants in order to implement and carry out the terms of all Orders and Decrees that may be entered and/or to entertain any suitable Application or Motion for additional relief within the jurisdiction of the Court, and will order other relief that the Court deems appropriate under the circumstances.