SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,

v.

Frank CATERINICCHIA and Trustees Loan and Discount Co., an Alabama Corporation, Defendants-Appellees.

No. 77-3517.

United States Court of Appeals, Fifth Circuit.

March 7, 1980.

Rehearing Denied April 18, 1980.

James H. Schropp, SEC, David Ferber, Sol., Theodore S. Bloch, Atty., Paul Gonson, Washington, D.C., for plaintiff-appellant.

Howard C. Alexander, Montgomery, Ala., for defendants-appellees.

Before MORGAN, REAVLEY and HATCHETT, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

The Securities and Exchange Commission (SEC) appeals from the denial of its motion for a permanent injunction enjoining Trustees Loan and Discount Company (Trustees) and its president, Frank Caterinicchia, from further violations of the antifraud provisions of the federal securities laws. Following an evidentiary hearing, the District Court for the Middle District of Alabama found that defendants' failure to disclose material information relative to the sale and renewal of the company's subordinated commercial notes constituted a violation of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as implemented by rule 10b–5, 17 C.F.R. § 240.10b–5. However, because the court concluded that there was no likelihood that defendants would resume their misconduct, it declined to grant the requested injunctive relief. Finding no error requiring reversal in this case, we affirm the district court.

I.

Trustees is an Alabama corporation engaged in the business of making small consumer loans. Beginning in 1972, the primary source of funds for these loans was the sale and renewal of the company's eight-month subordinated commercial notes. Before offering its notes for sale, Trustees obtained a ruling from the Alabama Securities Commission exempting the notes from registration under Alabama law. Trustees' decision to sell its notes only to Alabama residents enabled the company to rely upon the intrastate exemption from federal registration provided by section 3(a)(11) of the 1933 Act, 15 U.S.C. § 77c(a)(11).

In 1973 Trustees began to advertise its notes in newspapers of general circulation in Montgomery and Birmingham, Alabama. These advertisements advised readers to "earn 9% per year" by purchasing the promissory notes of this "home owned and home operated" corporation. Potential investors who responded to these ads were provided with a brochure which, in essence, promised both a high rate of interest and a high degree of safety. The brochure described the advantages of the notes in these terms:

- High interest return with safety
- Always worth face value of notes plus interest
- Hedge against inflation
- Will keep Alabama's dollars working in Alabama

In addition, the brochure assured investors that

These notes are backed by the integrity of an Alabama Corporation doing business since 1914 with sound financial management whose reputation is unexcelled in the state.

The brochure furnished to investors contained no information reflecting the financial condition of Trustees. This information would not have been encouraging to investors for, as the defendants concede, the company had sustained operating losses for five of the six years from 1970 through 1975. Moreover, Trustees did not provide investors with financial statements or otherwise inform them of the company's losses even after some purchasers had specifically requested access to such information. The district court concluded that Trustees' failure to inform investors of the company's weak financial condition constituted "material omissions in light of statements made."

Frank Caterinicchia began working for Trustees in October 1973 when he became manager of the company's Birmingham branch office. In 1974 Caterinicchia acquired an option to purchase the common stock of Arthur M. Whitney, then president and majority shareholder of Trustees. In May 1976, shortly after Whitney's death, Caterinicchia purchased a controlling inter-

est in the corporation and was elected as its president and one of its directors.

Simultaneously with Caterinicchia's gaining control of Trustees, the company came under the scrutiny of both the SEC and the Alabama Securities Commission. In a letter dated April 15, 1976, the state securities commission notified Trustees that its notes would no longer be exempt from state registration requirements. In response to this ruling, Trustees stopped the sale of promissory notes on April 16, 1976 at its Montgomery office and on May 7, 1976 at its Birmingham office. In further conversations with Trustees' attorney, the Director of the Alabama Securities Commission stated that because a previous director had approved the sale of these notes, he had no intention of commencing either civil or criminal proceedings against the company. The director made clear, however, that in addition to stopping the sale of new notes, the company should redeem existing notes as they matured and not allow them to be automatically renewed.[1] Although Trustees' counsel advised Caterinicchia that failure to obey the director's ruling would subject him to possible civil and criminal penalties, the company continued to renew the notes of Alabama residents who did not specifically request redemption.

On April 21, 1976, Trustees received a letter from the SEC advising the company of the antifraud provisions of the federal securities laws and seeking information as to whether the company had properly claimed an exemption from the registration provisions of the 1933 Securities Act. In preparing its response to the SEC's inquiry, Trustees discovered that some noteholders had moved out of state after purchasing the company's notes. On advice of counsel, Trustees began to redeem the notes of out-of-state noteholders.[2] However, the company continued to make no disclosure of relevant financial information to the Alabama residents whose notes it was renewing.

On December 16, 1976, a meeting was held between SEC officials and representatives of Trustees. At this meeting the SEC expressed its opinion that Caterinicchia should inform the company's noteholders that Trustees had a history of operating loses and had recently become insolvent. Fearing that disclosure would cause a run on the company, Caterinicchia sought additional time from the Commission in which to rehabilitate the company and make it into a profitable operation. On December 21, 1976, the SEC informed Trustees that it intended to seek injunctive relief against the company and to have the company placed in receivership. On December 28, 1976, Trustees filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. Under this plan and its subsequent amendments, Trustees avoided liquidation through an agreement with its noteholders and other creditors to extend the time for payment and reduce the interest rate on the notes.

The district court found that defendants' failure to disclose the company's financial condition constituted a violation of the antifraud provisions of the federal securities laws. Nevertheless, the court determined that the SEC had "failed to prove the likelihood of any continuing menace to the public" and, therefore, declined to grant the request for a permanent injunction.

## II.

Under section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), the SEC may seek an injunction whenever a person is engaged in or "about to engage in" proscribed activity. The district court is required to grant the injunction "upon a proper showing" by the SEC.

In this case the SEC seeks to enjoin future violations of the federal securities laws and does not allege that defendants are

---

1. Under the terms of the note agreement, unless the holder requested payment within ten days after the due date, the note would be automatically renewed.

2. In November 1976 Trustees sent a letter to out-of-state noteholders representing that it was redeeming their notes because the company had "extra cash on hand."

currently violating the law. The Fifth Circuit has stated that under these circumstances

> The critical question in issuing the injunction and also the ultimate test on review is whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future. To obtain injunctive relief the Commission must offer positive proof of the likelihood that the wrongdoing will recur. *SEC v. Commonwealth Securities, Inc.,* 574 F.2d 90, 99–100 (2d Cir. 1978). The Commission needs to go beyond the mere fact of past violations. *Id.*

*SEC v. Blatt,* 583 F.2d 1325, 1334 (5th Cir. 1978). *Accord, SEC v. Monarch Fund,* 608 F.2d 938 (2d Cir. 1979). Furthermore, the cases recognize that the decision whether to grant or deny injunctive relief is addressed to the sound discretion of the district court and will not be disturbed on appeal except for clear abuse. *SEC v. Blatt, supra,* 583 F.2d at 1334; *SEC v. MacElvain,* 417 F.2d 1134, 1137 (5th Cir. 1969), *cert. denied,* 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970); *SEC v. Aaron,* 605 F.2d 612 (2d Cir.), *cert. granted,* —— U.S. ——, 100 S.Ct. 227, 62 L.Ed.2d 168 (1979). The burden of showing that the trial court abused its discretion is necessarily a heavy one, *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir. 1972), particularly in view of the developing judicial attitude toward a closer appellate scrutiny of the issuance of injunctions. *SEC v. Blatt, supra,* 583 F.2d at 1334 and n.28, *citing SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 99 (2d Cir. 1978).

### III.

Initially, the SEC argues that in declining to grant injunctive relief, the district court misunderstood the remedial nature of the statutory provisions involved. As evidence of this misunderstanding, the SEC points out that the court characterized the injunction as an "extraordinary measure" warranted only if a "continuing menace to the public" is demonstrated. In describing the injunctive remedy provided by the securities laws as an "extraordinary measure," argues the SEC, the court failed to appreciate the important distinctions between private actions for injunctive relief and SEC injunctive actions.

We agree that "extraordinary" is an inappropriate adjective in the context of *statutory* injunctive relief.[3] Such relief must be granted whenever either of the statutory conditions, i. e. "engaged in or about to engage in" proscribed activity, are satisfied. We cannot agree, however, that the court reached its judgment by disregarding these statutory bases for injunctive relief. In framing the issues of fact to be determined at trial, the court accurately perceived that the determinative factor in an injunctive action is whether there exists a reasonable likelihood of further misconduct by the defendant. In requiring the SEC to establish that defendants presented a "continuing menace to the public," the court placed no greater burden on the SEC than the statute requires. Furthermore, had the SEC carried the burden of showing that future violations were likely, it is clear that the court would have issued the requested injunction. Thus, the court did not fundamentally misperceive the remedial nature of the statutory injunction as the SEC argues.

The SEC next argues that the three principal factors relied upon by the trial court in denying the injunction do not support its conclusion that future violations are unlikely. First, the SEC asserts that the court assumed that the supervisory control exercised by the bankruptcy court over Trustees' affairs militated against injunctive relief. The SEC then questions the ability of the bankruptcy court to detect violations of the securities laws and notes that, in any event, the supervision would last for only

---

**3.** Because the SEC's injunctive power is a creature of statute, the SEC need only establish what the statute requires, *i. e.,* that a person is engaged in or about to engage in prohibited acts or practices. The private plaintiff, on the other hand, must show irreparable harm and inadequate remedy at law before injunctive relief will be granted. *See* Note, Scienter and Injunctive Relief Under Rule 10b–5, 11 Ga.L. Rev. 879, 880 (1977).

one year.[4] We reject this argument for the simple reason that we do not believe that the bankruptcy court's supervision was an important factor in the trial court's decision to deny injunctive relief. As is evidenced by the Pretrial Order, the court was quite aware that the actual supervision of Trustees' affairs was limited to one year. Furthermore, the court noted in its opinion[5] that Caterinicchia would remain in control of the company and would not be under the direct supervision of the bankruptcy court. In our view, the challenged statement appears in the court's opinion not as an argument against issuing an injunction but as one of the facts necessary to an understanding of the case.

Second, the SEC contends that the court mistakenly attributed significance to defendants' decision to voluntarily cease their violations of the registration provisions of state and federal law. The SEC argues that in focusing on defendants' efforts to comply with the securities *registration* provisions,[6] the court ignored the more important fact that defendants did not cease their *antifraud* violations until the SEC threatened to sue. We disagree. The court was familiar with all the facts in this case and did not overlook defendants' continued refusal to reveal the company's financial condition to investors. Throughout its opinion the court refers to defendants' "omissions" and "misrepresentations" and, at one point, notes that these acts "were done day-to-day over a substantial period of time and were not a single inadvertent act." In essence, the SEC's argument amounts to no more than an assertion that defendants' previous nondisclosure of relevant financial information raises an inference that such misconduct is likely in the future. Because the SEC presented no convincing proof of

this likelihood, the court was entitled to conclude otherwise. We do not believe the district court abused its discretion in declining to accept the suggested inference.

Finally, the SEC points to the court's conclusion that substantial future violations would be impossible without public newspaper advertisements. The SEC objects that not only can violations occur without such ads, but that, even if the court's assumption were true, the denial of injunctive relief for this reason would place an impossible burden of surveillance on the Commission's limited resources. It is true that the courts have spared the SEC the task of having to keep potential violators under constant scrutiny. It would, therefore, be impermissible to deny an injunction for the reason that the SEC would be able to detect violations as they occurred. However, we do not believe the court committed this error. Reading the opinion as a whole, it is apparent that the court denied the injunction because the SEC had failed to prove that Caterinicchia was a bad character who was likely to continue to engage in unlawful practices if he thought he could get away with it. The comment that these violations would be easily detectable was added as a makeweight and was not intended as a primary rationale for denying injunctive relief.

To summarize, we decline to accept the premise that the court's finding of no reasonable likelihood of future violations was based primarily on the above "factors." We believe the true rationale for the court's decision was its conclusion that defendants' violation of the antifraud provisions resulted from a misguided attempt to protect investors by saving the company from bankruptcy and liquidation.[7] The court

4. Under the amendments to the Chapter XI arrangement filed with the bankruptcy court, the court would retain jurisdiction over Trustees for one year after the plan's confirmation date.

5. For purposes of the convenience, we refer to the district court's Findings of Fact and Conclusions of Law as the court's "opinion."

6. Although defendants did cease their violation of Federal registration provisions, they continued to renew the notes of Alabama residents with the knowledge that both the sale of new notes and renewal of existing notes violated state registration provisions.

7. At one point the court stated that the SEC had failed to show defendants' "bad faith." This statement is not inconsistent with the court's finding that defendants had violated the

was satisfied that defendants would not in the future sell securities without making the disclosures required by federal law. The fact that defendants violated the law in the past does not require a different conclusion. Finding no abuse of discretion, we affirm the district court's denial of injunctive relief.

AFFIRMED.

securities laws. The court found that defendants had known of the company's financial problems but had deliberately withheld this information from investors. Such intentional deception clearly satisfies the scienter requirement which this court has applied to SEC injunctive actions. See *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978). The fact that defendants did not intend to harm investors does not negate a finding of scienter. See W. Prosser, The Law of Torts § 107 at 700 (1971).