[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12152
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 25, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:08-cv-00899-EAK-MAP

FEDERAL TRADE COMMISSION,

Plaintiff - Appellee,

versus

USA FINANCIAL, LLC,
a Florida Limited Liability Company,
AMERICAN FINANCIAL CARD, INC.,
a corporation formerly known as Capital Financial, Inc.,
JEFFREY R. DEERING, individually and as owner, officer
or manager of the above listed corporations,
RICHARD R. GUARINO, individually and as owner, officer
or manager of the above listed corporations,
JOHN F. BUSCHEL, JR., individually and as owner, officer
or manager of one or both of the above listed corporations,

Defendants - Appellants,

UNITED STATES OF AMERICA,

Defendant.

Appeal from the United States District Court
for the Middle District of Florida

(February 25, 2011)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

USA Financial, LLC, American Financial Card, Inc., f.k.a. Capital

Financial, Inc., Jeffrey R. Deering, Richard Guarino, and John F. Buschel, Jr.

appeal the grant of summary judgment entered in favor of the Federal Trade

Commission ("FTC") and against defendants, jointly and severally, for permanent

injunctive relief and for equitable monetary relief in the amount of

$17,300,509.00. In a three-count complaint, the FTC alleged that the defendants

violated the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a), and

Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3(a)(2)(iii), by making false

and misleading representations in connection with the marketing of advance-fee

credit cards. The FTC also alleged that the defendants violated the TSR, 16

C.F.R. § 310.4(a)(4), by requesting and receiving payment of a $200 fee before

obtaining or arranging an extension of credit.

The defendants argue on appeal that the district court erred by: (1) granting summary judgment for the FTC; (2) finding individual liability; (3) granting the FTC's request for a permanent injunction against American Financial; (4) freezing their assets; and (5) awarding consumer redress. After thorough review, we affirm.

I.

Between November 2004 and late 2007, the defendants marketed and sold advance fee credit cards to consumers through telephone solicitations.[1] During the calls, consumers were told that they had been approved for a credit card with a credit limit of $2,000, cash advance capabilities, and a fixed interest rate of 8.9%. Consumers were also told that to open an account they had to pay a one-time fee of $200.

Once consumers agreed to open an account and provided their bank information for payment of the one-time fee, they listened to a recorded "verification script." The recording set out the credit card's terms and conditions. It informed callers that the card being offered was "not affiliated with [V]isa or

---

[1] Because this case is before us after the district court's grant of summary judgment in favor of the FTC, we view the facts in the light most favorable to the defendants, the non-moving party. See Bankston v. Then, 615 F.3d 1364, 1367 n.3 (11th Cir. 2010) ("We review a district court's grant of summary judgment de novo, viewing all facts in the light most favorable to the non-moving party.").

[M]astercard" and was a "merchant finance account."

Consumers received a thin-plastic card usable only for purchasing products from an online catalog. The FTC learned that the Better Business Bureau of West Florida had received 766 complaints against American Financial and 52 complaints against USA Financial. In the complaints, consumers stated that they paid the $200 fee believing that they were obtaining a credit card that could be used to make purchases anywhere—not a catalog card that could only be used at the defendants' online store.

The FTC filed this action, alleging violations of the FTCA and the TSR. The district court granted the FTC's motion for summary judgment, concluding that no reasonable trier of fact could find in the defendants' favor. The defendants now appeal.

## II.

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. Rine v. Imagitas, Inc., 590 F.3d 1215, 1222 (11th Cir. 2009). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a

4

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); see also Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) ("The basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Anderson, 477 U.S. at 251–52, 106 S. Ct. at 2512)).

## III.

## A.

Section 5 of the FTCA makes "unfair or deceptive acts or practices in or affecting commerce" unlawful. 15 U.S.C. § 45(a)(1). "To establish liability under section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003).

The defendants made material representations in their telemarketing calls that created the deceptive impression that they were offering consumers a general purpose credit card. See FTC v. Cyberspace.com, LLC, 453 F.3d 1196, 1200–01 (9th Cir. 2006) (finding a mailing extending an offer for services at a monthly fee

unlawful because it created the deceptive impression that it was simply a refund or rebate). The defendants represented that the offered card had the features of a general purpose card. Consumers were told that it had a fixed interest rate, a $2,000 credit limit, and cash advance capabilities. The verification scripts that informed consumers that the credit card being offered was not affiliated with Visa or Mastercard and was a "merchant finance account" failed to dispel the confusion that the defendants' representations created among reasonable consumers. The overall impression created by the calls was that consumers were receiving a card that could be used to make purchases anywhere.

Our conclusion is bolstered by the Receiver's finding that less than 3 percent of USA Financial's 2007 revenues were derived from merchandise sales. The fact that consumers did not purchase the defendant's products after obtaining their credit cards, which they could use to buy only defendant's products, suggests that they were actually deceived. While "[p]roof of actual deception is unnecessary to establish a violation of Section 5, such proof is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances." Id. at 1201 (alteration in original) (citation and quotation marks omitted).

The district court did not err in granting summary judgment to the FTC on

the FTCA § 5 violation because, viewing the facts in the light most favorable to the defendants, no reasonable factfinder could conclude that the telemarketing calls were not likely to mislead customers acting reasonably under the circumstances in a way that is material. See Tashman, 318 F.3d at 1277.[2]

We also conclude that the district court properly granted summary judgment in favor of the FTC on the TSR violations. Under 16 C.F.R. § 310.3(a)(2)(iii), "[i]t is a deceptive telemarketing act or practice . . . for any seller or telemarketer" in the sale of goods or services to misrepresent, directly or by implication, "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." The defendants violated § 310.3(a)(2)(iii) by creating the impression in their solicitations that the credit card being offered could be used to make purchases anywhere. Likewise, § 310.4(a)(4) criminalizes "[r]equesting or receiving payment of any fee or

---

[2] We note that the defendants argue that the district court erred in granting summary judgment for the FTC because they had a "good faith" defense and were operating under a consumer finance license issued by the state of Florida. However, a defendant cannot avoid liability under section 5 of the FTCA by showing that he acted in good faith because the statute does not require an intent to deceive. See Orkin Exterminating Co. v. FTC, 849 F.2d 1354, 1368 (11th Cir. 1988); Curtis Lumber Co. v. Louisiana Pacific Corp., 618 F.3d 762, 779 (8th Cir. 2010) (collecting cases). In any event, the fact that a defendant operated under a state issued license has no bearing on whether the defendant engaged in "deceptive acts." Neither contention gives rise to a genuine issue of material fact. Accordingly, the district court did not err in granting summary judgment for the FTC on those grounds.

consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person." 16 C.F.R. § 310.4(a)(4). Based on the undisputed facts, the defendants violated § 310.4(a)(4) by representing to consumers that they would be approved for a credit card upon paying a $200 advance fee for the card. The district court's grant of summary judgment was not improper.

B.

Defendants Deering, Guarino, and Buschel, Jr. also contend that the district court erred by finding, as a matter of law, that they were liable in their individual capacities. An individual may be held liable under the FTCA for corporate practices if the FTC shows "that the individual defendants participated directly in the practices or acts or had authority to control them . . . . The FTC must then demonstrate that the individual had some knowledge of the practices." FTC v. Gem Merch. Corp., 87 F.3d 466, 470 (11th Cir. 1996) (alteration in original) (quotation marks omitted).

Defendants Deering and Buschel, Jr. argue that the district court erred in concluding that they participated in or "had authority to control" the corporate

8

entities' illegal acts.[3]  The evidence shows that Deering was a manager of USA

Financial.  In that capacity, he signed checks and an application for telephone

service on behalf of the corporation.  The evidence also shows that Buschel was

listed as the vice president of American Financial in bank documents.  Buschel

also signed bank applications and resolutions on the corporation's behalf.  In their

capacity as manager and vice president, and as demonstrated by their conduct,

Deering and Buschel had the "authority to control" the corporate entities' acts.

For that reason, the district court did not err in imposing individual liability.

C.

American Financial contends that the district court lacked authority under

section 13(b) to issue a permanent injunction against it.  Section 13(b) of the

FTCA, 15 U.S.C. § 53(b), provides that "in proper cases the [FTC] may seek, and

after proper proof, the court may issue, a permanent injunction."  See Amy Travel

Serv., Inc., 875 F.2d at 571 (explaining that "Section 13(b) is often used by the

FTC to pursue violations of section 5 of the FTCA or other violations of

---

[3] Defendants Deering, Guarino, and Buschel, Jr. also argue that the FTC failed to establish a FTCA § 5 violation and therefore individual liability was improper.  See FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir. 1989) (explaining that an individual may be held liable under the FTCA for corporate practices only after corporate liability is established).  We have already determined that the defendants' conduct violated FTCA § 5.  This derivative argument is therefore no longer viable.

statutes"). In this case, the district court entered a permanent injunction prohibiting the defendants from engaging in conduct that would violate section 5 of the FTCA or any provision of the TSR.

American Financial argues that the district court erred by granting a permanent injunction under § 13(b) based on past violations of the FTCA or TSR that ceased before the FTC brought suit and have not been shown likely to recur. See FTC. v. Evans Products Co., 775 F.2d 1084, 1087–88 (9th Cir. 1985) (holding that a district court may not issue a preliminary injunction under § 13(b) to remedy past violations that have not been shown likely to recur). According to the undisputed facts, American Financial ceased its deceptive practices in late 2007. The FTC's complaint was filed on May 12, 2008. American Financial asserts that the district court failed to make a finding that there was a reasonable likelihood that its violations would recur. Accordingly, American Financial argues that the district court's issuance of a permanent injunction was improper.

In this case, the district court enjoined American Financial from engaging in future violations of the FTCA and TSR even though its unlawful conduct had ceased. Under those circumstances, permanent injunctive relief is appropriate if "the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." SEC v. Caterinicchia, 613 F.2d 102, 105 (5th Cir.

1980) (quoting <u>SEC v. Blatt</u>, 583 F.2d 1325, 1334 (5th Cir. 1978)).[4] The district court concluded that permanent injunctive relief was necessary to prevent future violations. The court found that "the transformation of Capital Financial into American Financial, and American Financial's transformation into USA Financial" indicated a reasonable likelihood of future violations. We agree. The defendants' formation of new corporate entities to facilitate their violations of the FTCA and TSR demonstrates an unwillingness to comply with the law. The district court therefore did not err in issuing a permanent injunction.

D.

In July 2008, the defendants agreed to, and the district court entered, a "Stipulated Preliminary Injunction with Asset Freeze and Appointment of Receiver." After granting summary judgment in favor of the FTC, the district court entered an order keeping the asset freeze "in effect until the Defendants have made full payment of the monetary judgment." The defendants contend that was error because the FTC failed to show a likelihood of asset dissipation if the asset freeze was not maintained.

As an incident to its express statutory authority under section 13(b) of the

---

[4] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

FTCA, a "district court has the inherent power of a court of equity to grant ancillary relief, including freezing assets and appointing a Receiver." FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1432 (11th Cir. 1984). Congress intended to give district courts "authority to grant any ancillary relief necessary to accomplish complete justice," including freezing assets. Id. at 1434 (quoting FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir. 1982)). In this case, the frozen assets were profits from the defendants' illegal activities. Maintaining the asset freeze until the monetary judgment was satisfied was necessary to "accomplish complete justice." See CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002) ("Since the [frozen] assets in question here were profits the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of the case."). The district court's imposition of the asset freeze was not error.

E.

Finally, the defendants assert in their brief that the district court erred in awarding consumer redress in the amount of $17,300,509.00. However, the defendants fail to explain why the district court's award was erroneous. "We routinely decline to address such cursory arguments, and this case presents no exception." United States v. Belfast, 611 F.3d 783, 821 (11th Cir. 2010); United

12

States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived."). We therefore decline to address this issue.

F.

For all of these reasons, we affirm.

AFFIRMED.