[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13897
_____

D.C. Docket No.  1:15-cv-23489-CMA


U.S. SECURITIES AND EXCHANGE COMMISSION,

                                                      Plaintiff - Appellee,

versus

CHRISTOPHER J. HALL,

                                                      Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 4, 2019)

Before JILL PRYOR, BRANCH, and BOGGS,[*] Circuit Judges.

PER CURIAM:

_____
[*] Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This appeal stems from an enforcement action that the Securities and Exchange Commission ("SEC") brought against Christopher Hall for violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b),[1] and Section 17(a) of the Securities Act of 1933, 15 U.S.C. §77q(a)[2] (hereinafter "the antifraud provisions of federal securities law"). After a seven-day trial in February 2017, a unanimous jury determined that Hall committed multiple violations of the antifraud provisions of federal securities law. The district court then entered an order and final judgment against Hall, granting the SEC's requests for an injunction and imposing an officer-and-director bar against Hall. The district court also ordered Hall to disgorge ill-gotten gains in the amount of approximately $3.7 million and also pay approximately $1 million in prejudgment interest.

---

[1] "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b). Hall was also found liable of violating the Rule promulgated thereunder, Exchange Act Rule 10b-5. *See* 17 C.F.R. § 240.10b-5.

[2] "It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q.

2

Because the district court did not abuse its discretion in imposing the remedies requested by the SEC, we AFFIRM the district court's order.

## I.    BACKGROUND

The timeline of events in this case dates back to the nationwide financial crisis in 2008. The full factual background is extensive and "involve[s] multiple parties and transactions." *SEC v. Hall*, No. 1:15-cv-23489-CMA, slip op. at 1 (S.D. Fla. April 13, 2017) (hereinafter "First Order"). We provide only the relevant facts here; they are fairly straightforward. Because this case involves a jury verdict, we must view the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences and credibility determinations in favor of the jury's verdict. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

Throughout 2009 and 2010, Hall obtained millions of dollars in loans from his brokerage firm, Penson Financial Services, Inc. ("PFSI"). Hall was the chairman and controlling shareholder of Call Now, Inc., which also had a brokerage account with PFSI. Prior to the financial crisis in 2008, Hall and Call Now borrowed millions of dollars in margin loans through these brokerage accounts to purchase bonds and to fund operating expenses at Retama Park, a financially struggling Texas horse racetrack operated by Call Now.

By 2009, both Hall and Call Now's brokerage accounts had substantially diminished in value, so PFSI required Hall and Call Now to deposit additional

3

collateral. In response to PFSI's call for collateral, Hall pledged Call Now stock, but told PFSI he needed loans to unencumber the shares because they were pledged to other lenders. PFSI agreed to loan him approximately $3.68 million. In fact, Hall's shares were unencumbered; Hall had lied so that PFSI would loan him more money.

In 2010, Hall and Call Now again had shortfalls in their margin accounts with Penson. To avoid liquidation, Hall agreed to a restructuring that required him to sell some of his Call Now shares back to Call Now, which would then pledge the shares as additional collateral to PFSI. Hall claimed that the shares were encumbered and that he could not sell the shares back to Call Now until he paid off a $1.8 million lien. PFSI loaned him $1.8 million, and the shares were pledged. Unlike before, these shares were actually subject to a lien, but Hall had reached a deal with the lienholder to satisfy the lien for only $850,000. After Hall satisfied the lien, he kept the rest of the money that PFSI had loaned him. All told, as a result of these lies about the liens, Hall obtained millions in loans (about $5.5 million) from PSFI, but paid only $850,000 to a single lender who had a valid lien on Hall's Call Now Stock.[3] Hall also pledged his interest in a real-estate limited

---

[3] Hall claims he also paid an additional $350,000 and interest payments, for a total of $1,231,666.69. However, there is no evidence that this additional $350,000 payment was ever made. Hall's only support for this assertion was his own unsubstantiated trial testimony. He did not call the lender as a witness, nor did he point to any documentary or testimonial evidence.

4

partnership as additional collateral for his margin loans. As he had with the Call Now stock, Hall claimed that his interest in the limited partnership was subject to an existing lien, and failed to disclose that *he* was the holder of that lien, through an entity created for his benefit to hide his assets.

In September 2015, the SEC brought an enforcement action against Hall for violating Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934. In February 2017, a seven-day trial was held. During the trial, Hall admitted he lied to PFSI numerous times to receive millions of dollars in loans.[4]

At the close of evidence, Hall moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that the SEC failed to show that his lies were material or made in connection with a securities transaction. The district court denied the motion. A unanimous jury found that Hall committed multiple violations of the antifraud provisions of the federal securities laws. Hall never filed a renewed motion for judgment as a matter of law or moved for a new trial.

In March 2017, after the trial concluded, the SEC filed a Motion for Final Judgment seeking: (1) entry of a final judgment; (2) a permanent injunction barring Hall from violating the securities laws in the future; (3) disgorgement of $3,747,717.12; (4) prejudgment interest of $955,583.39; (5) a civil penalty of

---

[4] For example, when asked if he lied about liens, he admitted, "I did."

5

$3,747,717.12; and (6) a permanent officer-and-director bar. Hall opposed the requested remedies, calling them "highly excessive and not supported by record evidence or the prevailing law."

On April 13, 2017, after considering the parties' briefs, the district court issued the First Order and final judgment. The district court granted the SEC's request for a permanent injunction and imposed a ten-year officer-and-director bar. In addressing the SEC's disgorgement request, the district court accepted that the SEC had proven that Hall improperly obtained $3,747,717.12 through his fraud.[5] But the district court ordered no disgorgement because it found that the SEC was required to offset this amount by the value of the collateral Hall had deposited into his margin account. The district court explained that "[b]ecause Hall pledged the collateral as security for repayment of these loans, presumably [PFSI] retained the full value of the collateral." First Order at 15 n.2. Without evidence about the value of the collateral, the court concluded that it would be inappropriate to order disgorgement. The district court instead imposed a $225,000 civil money penalty against Hall.

---

[5] This amount included the $ 6,856,785.12 in loans Hall received from PFSI to pay off actual and purported liens on Call Now shares offset by the $850,000 Hall paid to a Call Now lienholder. The district court also excluded proceeds that Hall received from lies he told outside the statute of limitations period.

The following month, on May 11, 2017, the SEC filed a motion asking the district court to reconsider its ruling on disgorgement. The SEC argued that Hall was entitled to no offset based on the value of the Call Now shares that he pledged as collateral to PFSI.  The SEC asserted that once Hall's account had insufficient collateral, he was obligated either to pledge additional collateral to PFSI or risk that the existing collateral pledged in his margin account would be liquidated. So even if Hall had not lied to PFSI, he still would have been required to post the collateral. When Hall provided the collateral, PFSI posted the full value of the collateral as a credit to his margin debt. The SEC argued that giving Hall an offset now for the value of the collateral would give him credit twice for the same collateral.

In the alternative, the SEC argued that if the value of the pledged collateral was relevant, Hall failed to carry his burden to prove its value. The SEC explained that Hall had the burden of proving the value of the offset. And given his failure to show the value of his Call Now stock, he could not show that he was entitled to any offset.

The district court agreed with the SEC and, on June 29, 2017, issued an order granting the motion (the "Second Order") and an amended judgment. *SEC v. Hall*, No. 15-23489-CIV, 2017 WL 3635108 (S.D. Fla. June 29, 2017). The Second Order noted that, "as demonstrated by the SEC and not rebutted by Hall,

7

had Hall not lied about liens encumbering the collateral, [PFSI] and Hall still would have agreed to Hall posting the collateral, but [PFSI] would not have loaned him the $3.68 million in cash." *Id.* at *3. The district court determined that the SEC reasonably calculated Hall's profits and reasonably declined to offset those profits with the value of Hall's posted collateral. The district court imposed the disgorgement and prejudgment interest amounts identified and requested by the SEC, and ordered Hall to disgorge $3,747,717.12 and prejudgment interest of $955,583.39 (totaling $4,703,300.51).

Hall timely appealed. On appeal, Hall argues that the district court abused its discretion in assessing disgorgement and in requiring him to pay prejudgment interest. Hall also takes issue with the imposition of the injunction and officer-and-director bar, and disputes evidence supporting the jury's verdict at trial.[6]

---

[6] On appeal, Hall challenges the jury's finding that he was liable, arguing that there was insufficient evidence to establish that the misrepresentations he made to PFSI were "material" or occurred "in connection with the purchase and sale" of securities. "Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges—prior to submission of the case to the jury, and after the verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006). Rule 50(a) governs the first stage, allowing a party to challenge the sufficiency of the evidence prior to submission of the case to the jury, and authorizes the district court to grant such motions at the court's discretion. *Id.* Rule 50(b) sets forth the requirements for renewing a sufficiency of the evidence challenge *after* the jury verdict and entry of judgment. *Id.* at 400.

The Supreme Court has explained that to challenge on appeal the sufficiency of the evidence supporting a verdict, a party must file a Rule 50(b) motion. *Id.* A "postverdict motion is necessary because the determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Id.* (internal quotation marks omitted). If a party fails to make an appropriate post-verdict

## II.    DISCUSSION

### A. Disgorgement and Prejudgment Interest

#### 1.  Standard of Review

When reviewing the amount of ill-gotten gains to be disgorged by a defendant, we review the district court's findings for abuse of discretion. *SEC v. Calvo*, 378 F.3d 1211, 1217–18 (11th Cir. 2004)). "[W]hen reviewing a district court's disposition of a motion for reconsideration after final judgment, we have consistently stated that the decision to grant such relief is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (footnote omitted).

#### 2.  Discussion

"Generally, disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain.' Disgorgement requires that the defendant give up 'those gains . . . properly attributable to the defendant's interference with the claimant's legally protected rights.'" *Kokesh v. SEC*, 137 S. Ct. 1635, 1640 (2017) (alteration in original) (quoting Restatement (Third) of Restitution and Unjust

---

motion, we have "no authority" to consider its challenge to the sufficiency of the evidence. *Hi Ltd. P'Ship v. Winghouse of Fla., Inc.*, 451 F.3d 1300, 1302 (11th Cir. 2006).

Here, Hall made a Rule 50(a) motion, arguing that the SEC failed to show that his lies were material or made in connection with a securities transaction. But he failed to file a post-verdict motion, which means that we have no authority to review Hall's challenges to the sufficiency of the SEC's evidence at trial.

Enrichment § 51, cmt. a, p. 204 (2010)). "The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. . . . Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Calvo*, 378 F.3d at 1217 (internal quotation marks and citations omitted). After the SEC produces its approximation of ill-gotten gains, "[t]he burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation." *Id.*

It is clear that the district court carefully considered the disgorgement issue and the evidence provided by the parties on both occasions. The district court's Second Order (the order at issue in this appeal) amended the First Order in response to the SEC's Motion for Reconsideration of the district court's First Order. In the Second Order, the district court revisited the disgorgement issue and determined that the SEC "reasonably" set forth the calculation for determining Hall's profits.

After the SEC provided a reasonable approximation of Hall's ill-gotten profits, the burden then shifted to Hall "to demonstrate that the SEC's estimate [was] not a reasonable approximation." *Id.* But the district court found that Hall failed meet this burden because he did not provide "any evidence he would not have pledged the same collateral in the first transaction even without the

10

fraudulently obtained up-front cash payment, nor has he shown he incurred any losses as a result of his fraudulent misrepresentations in the second and third transactions." *Hall*, 2017 WL 3635108, at \*4. Because Hall failed to rebut the SEC's reasonable approximation, the district court's decision to impose the reasonable disgorgement amount proposed by the SEC was not an abuse of the court's discretion. Accordingly, we affirm the district court's order requiring Hall to disgorge $3,747,717.12.

Relatedly, the decision to grant prejudgment interest—and the rate at which interest is awarded—falls squarely within the discretion of the district court. *SEC v. Carrillo*, 325 F.3d 1268, 1273 (11th Cir. 2003). On appeal, Hall fails to prove that the district court was acting outside of its discretion in imposing the prejudgment interest amount. He continues to rely on the same overvaluation of the collateral he provided to PFSI that the district court correctly disregarded. This overvaluation was resisted by the SEC in its approximation, and the district court found that it was "reasonable not to offset those profits by the value of the Call Now stock Hall sold, as the fraud was not in the sale of stock to Call Now; rather the fraud occurred when Hall fraudulently induced [PFSI] to loan more cash to Call Now than was needed to pay off the liens on that stock." *Hall*, 2017 WL 3635108, at \*3. Accordingly, we affirm the district court's order requiring Hall to pay prejudgment interest in the amount of $955,583.39.

11

### B. Permanent Injunction and Officer-and-Director Bar

#### 1. Permanent Injunction

"[T]he decision whether to grant or deny injunctive relief is addressed to the sound discretion of the district court and will not be disturbed on appeal except for clear abuse." *SEC v. Caterinicchia*, 613 F.2d 102, 105 (5th Cir. 1980). 15 U.S.C. § 78u (d)(1)[7] and 15 U.S.C. § 77t(b)[8] grant the SEC the authority to obtain a permanent injunction, which it sought and the district court granted here.

In determining whether to grant the SEC's request for a permanent injunction, a court applies a two-part test, which requires the SEC to establish: "(1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *Calvo*, 378 F.3d at 1216. Because the jury found Hall liable for violations of securities laws, we consider the

---

[7] "Whenever it shall appear to the Commission that any person is engaged . . . in acts or practices constituting a violation of any provision of this chapter [or] the rules or regulations thereunder . . . [the SEC] may in its discretion bring an action in the proper district court of the United States . . . to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction . . . shall be granted without bond."

[8] "Whenever it shall appear to the Commission that any person is engaged . . . in any acts or practices which constitute . . . a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, the Commission may, in its discretion, bring an action in any district court of the United States . . . to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted."

*prima facie* case required by part one as easily met. Likewise, Hall "do[es] not dispute that the SEC has established a prima facie case for its . . . claims." *S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 807 (11th Cir. 2015).

Thus, only part two is at issue here. Under part two, the district court should consider the following "[i]ndicia that a wrong will be repeated[:] . . . [the] 'egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.'" *Calvo*, 378 F.3d at 1216 (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)). Hall argues that the permanent injunction imposed by the district court is inappropriate because the SEC failed to properly show that Hall's conduct was "egregious."[9] The district court, however, engaged in a lengthy, thoughtful, and well-reasoned analysis of the part-two factors and determined that "Hall is a repeat violator . . . [who] acted egregiously, with a high degree of scienter, and is very likely to encounter

---

[9] The language of the permanent injunction in this case appears to track the language of the relevant securities statutes and regulations. We do not assess, however, whether the injunction was an improper obey-the-law injunction because Hall failed to raise the issue in the district court or on appeal. *See Access Now, Inc., v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (recognizing that if an argument is not briefed on appeal that "evaluating its merits would be improper").

opportunities for future violations." *See* First Order at 9. We agree, and find that the district court did not abuse its discretion.

### 2. Officer-and-Director Bar

District courts are afforded substantial discretion in deciding whether to impose an injunction that bars an individual from serving as an officer or director. *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995).

Similar to its authority to issue an injunction as discussed above, the court's ability to impose an officer-and-director bar is also statutory. *See* 15 U.S.C. § 78u(d)(2) ("[T]he court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 78j(b) of this title or the rules or regulations thereunder from acting as an officer or director . . . if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer."); *see also* 15 U.S.C. § 77t(e) ("[T]he court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 77q(a)(1) of this title from acting as an officer or director . . . if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer.").

14

When deciding whether to impose a bar—and, relatedly, how long the bar should be—the district court considered the following factors: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Patel*, 61 F.3d at 141. *See also SEC v. Huff*, 758 F. Supp. 2d 1288, 1356 (S.D. Fla. 2010) (citing *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998)), *aff'd*, 455 F. App'x 882 (11th Cir. 2012).[10] Again, the district court engaged in a careful analysis of these factors. The district court's officer-and-director analysis echoed its injunction analysis, noting that Hall's multiple, repeated violations were egregious and conducted with a high degree of scienter—all while Hall was the Chairman of Call Now. At trial, Hall also admitted that he lied to PFSI in order to obtain numerous loans. Notably, although the district court found that there was a "high likelihood [Hall's] conduct may recur," the district court declined to impose the SEC's requested permanent bar. First Order at 11. Instead, the district court found a ten-year bar appropriate after "factor[ing] in the egregiousness and recurrence of Hall's

---

[10] Hall does not challenge the use of these factors as a matter of law. He instead focuses his argument on the test's application, arguing that the imposition of a ten-year bar is inappropriate because the SEC failed to show that his conduct was egregious. Accordingly, we need not decide whether a district court must consider these factors in all cases.

actions, as well as his apparent recognition that he knowingly lied to receive large sums of money, while holding fast to the position he did not commit any securities violations." *Id.* We find that the district court did not abuse its discretion.

We also note that Hall's arguments in this appeal continue to showcase his insistence that he did not commit any securities violations—in spite of his own trial testimony, in which he admitted the existence of the liens was a lie aimed at inducing PFSI to advance him more money. Likewise, Hall had not even paid the initial $225,000 penalty amount imposed by the First Order by the time the Second Order was issued, and the district court noted that Hall failed to pay "in defiance of the Court's [First] Order and as further evidence of his lack of remorse." *Hall*, 2017 WL 3635108, at *1. If anything, Hall's continued proclamation of his innocence and resistance to paying any amount of restitution evidences his continued failure to recognize "the wrongful nature of [his] conduct." *See Calvo*, 378 F.3d at 1216 (internal quotation marks omitted). These facts create further support for the district court's initial determination that a ten-year injunction and an officer-and-director bar were appropriate.

Because we have not identified any abuse of discretion by the district court, we AFFIRM.

16